IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

GAYLE LENORA SCOTT,

                Plaintiff,                      OPINION AND ORDER

  v.

                                                         12-cv-534-wmc

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,

                Defendant.

---

      Pursuant to 42 U.S.C. § 405(g), plaintiff Gayle Scott seeks judicial review of a final determination by the Commissioner of Social Security finding that she was not disabled within the meaning of the Social Security Act. Scott principally contends that remand is warranted because the administrative law judge ("ALJ") failed: (1) to account for the limitations regarding her fibromyalgia; (2) to account for her limitations with respect to concentration persistence and pace ("CPP"); and (3) to account for the opinion of a treating physician properly. For the reasons set forth below, the case will be remanded to the Commissioner for further proceedings.

BACKGROUND[1]

**I. Procedural History**

      Gayle Scott claims disability beginning on August 19, 2003. The Agency denied Scott's March of 2006 application for social security benefits initially and upon reconsideration. After an evidentiary hearing (AR 186), ALJ Arthur Schneider also rejected Scott's disability claim, finding based on her residual functional capacity ("RFC")

---

[1] The following facts are drawn from the administrative record ("AR"), which can be found at dkt. #8.

1

and the testimony of the vocational expert that Scott was capable of adjusting to other work existing in the national economy.  (AR 198.)

Scott then appealed the ALJ's June 15, 2009, decision.  (AR 260-61.)  On April 10, 2010, the Appeals Council vacated the ALJ's decision denying her original application, remanding the case back to ALJ Schneider in order to:  (a) address a treating source opinion; (b) give consideration to a functional capacity evaluation covering the entire claim period; and (c) if warranted, obtain supplemental evidence from a vocational expert.  (AR 201-202.)

On remand from the Appeals Council, ALJ Schneider again held a hearing on August 3, 2010, during which Scott testified, as did state-appointed medical and vocational experts.  (AR 25.)  On October 1, 2010, the ALJ once again found that Scott was capable of adjusting to other work that existed in the national economy and, therefore, was not disabled.  (AR 25-37.)

On October 31, 2011, the Appeals Council granted review of this second ALJ decision.  This time, the Council advised it proposed to find Scott not disabled, but would consider any comments or new and material evidence Scott wished to submit.  (AR 203-06.)  On February 3, 2012, the Appeals Council went further by issuing a decision adopting the findings of the ALJ.  In doing so, the Council assigned little weight to opinions from Merino and Dean, Scott's treating physicians, after taking notice that they were not evaluated by the ALJ.  Accordingly, the Appeals Council found Scott not disabled, which would then become the final decision of the Commissioner.  (AR 16-18.)

## II. Relevant Medical Evidence

Since 2003, Scott has seen a number of health care providers for complaints of pain. Plaintiff provides an exhaustive list from her medical record in her opening brief, from which the court provides only highlights.

<u>2003</u>

On August 8, 2003, Dr. Braco noted Scott "should avoid overhead work with the right shoulder . . . avoid heavy labor situations," but "may still stand, walk, sit, drive, and work eight hours a day." (AR 847.) On September 4, Braco noted "[w]ork limitations kept as the same 30-pound carry limit and shoulder-level work of 5 to 6 pounds . . . These limits are not due to the work injury of 06/2003." (AR 841.)

<u>2004</u>

On March 30, 2004, Scott saw Dr. Bentkowski, who noted that she had just gone to the Mayo Clinic for an evaluation of her chronic lower back pain, but was told surgery would not improve anything. Bentkowski went on to note that Scott "is currently on Darvocet N-100 every six hours as needed . . . she uses it less than once a day. She complains of being somewhat depressed about the whole situation . . . She is very frustrated." (AR 811.)

On November 22, Dr. Bentkowski noted Scott "decided to stop taking her oral medications which included Neurontin, Zonegran, Darvocet, and Effexor. . . Surprisingly enough her back pain did not get worse at all." The next day, Bentkowski noted that Scott was complaining of "right earaches, increased irritability, moody, grumpy, snappy. She thinks her depression, however, is well controlled. I recommended that patient see a

3

psychiatrist or at least a psychotherapist. She, however, declined an appointment." (AR 756.)

2006

Some fourteen months later, on February 1, 2006, Scott reported that while she was still having lower back and bilateral leg pain, she had no new complaints. On that same day, Dr. Bentkowski completed a Physical Capabilities Evaluation for Assurant Employee Benefits and found Scott was able to sit or drive for 2 hours out of an 8-hour workday, stand or walk for 1 hour out of an 8-hour day, but would need to alternate positions every 20 to 30 minutes. He further found that Scott could bend/stoop, climb and push/pull occasionally, and balance frequently. She could also lift and carry up to 20 pounds occasionally. Lastly, he found she could use her hands for grasping and fine manipulation but not on a repetitive basis. (AR 884-85.)

After a functional capacity evaluation by Assurant Employee Benefits, which determined that she could go back to work with restrictions, Scott was again seen by Dr. Bentkowski on October 3, complaining of chronic lower back pains and increased anxiety. At the time, Bentkowski was unsure how he could help her aside from advising her to get an independent evaluation of functional capacity. Bentkowski also noted that Scott was doing "fairly well" on her current pain regimen. (AR 893.)

2009

Fast forward three years, when Scott saw Dr. Douglas M. Soat, a licensed psychologist, for an approximately hour long interview on January 28, 2009. At that time, Soat noted that Scott: "appears to be capable of understanding, remembering, and carrying out simple instructions . . . [but] [s]he may at times have some problems

4

maintaining her attention and concentration [and] she may be able to adapt to changes in the work place."  (AR 970.)

On November 17, Scott saw Dr. Leslie Dean for worsening depression and fibromyalgia, for which she wanted to restart her Lyrica medication and an antidepressant.  (AR 1012.)

2010

More than a year later, on March 5, 2010, Dr. Dean saw Scott, noting that she is "having LOTS of worsening depression & Anxiety but resistant to going back on antidepressant.  Tired and frustrated."  (AR 1017.)  On April 30, Dean saw Scott again, noting "she has had better mood since re-starting the Cymbalta.  Back pain is about the same [Scott] is trying to get her spring cleaning done & is sore."  (AR 1023.)

### III. Administrative Law Judge's Decision

The ALJ found that Scott had not engaged in substantial gainful activity (or "SGA") since August 19, 2003.  (AR 28.)  He also found that Scott had the following severe impairments:  fibromyalgia and a disorder of the back.  (*Id*.)  Still, the ALJ found Scott to have the following RFC: "able to lift 50 pounds occasionally and 25 pounds frequently with limited overhead reaching with either extremity.  She is able to sit for 6 hours out of an 8-hour day.  She is able to stand for 6 hours out of an 8-hour day.  She is available only for simple, routine, and repetitive work.  She is able to respond appropriately to supervisors, co-workers and the public.  She is able to adjust to routine changes in the work setting."  (AR 31.)  The ALJ also found that Scott was able to perform her past relevant work of a security guard and machine operator, neither of which require the performance of work related activities precluded by her RFC.  (AR 36.)

OPINION

The standard by which a federal court reviews a final decision by the commissioner is well settled: the commissioner's findings of fact are "conclusive" if supported by "substantial evidence." 42 U.S.C. § 405(g). Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). Thus, where conflicting evidence allows reasonable minds to reach different conclusions about a claimant's disability, the responsibility for the decision falls on the commissioner. *Edwards v. Sullivan*, 985 F.2d 334, 336 (7th Cir. 1993).

Even so, the Seventh Circuit has repeatedly admonished district courts not simply to "rubber-stamp" the Commissioner's decision without a critical review of the evidence. *See, e.g., Ehrhart v. Sec'y of Health and Human Servs.,* 969 F.2d 534, 538 (7th Cir. 1992). A decision cannot stand if it lacks evidentiary support or "is so poorly articulated as to prevent meaningful review." *Steele v. Barnhart*, 290 F.3d 936, 940 (7th Cir. 2002).

Scott challenges the ALJ's decision on three principal grounds: (1) a failure to account for the limitations regarding Scott's fibromyalgia; (2) a failure to account adequately for the limitations in CPP by cherry-picking Dr. Soat's findings that were supportive of a non-disability finding; and (3) erroneous rejection of the opinion of a treating physician. Because the court finds merit in each of these criticisms, the court will remand the case. Given that the ALJ will be required to reconsider these three issues, which may well alter the landscape, the court will decline to comment on the additional credibility issue raised by Scott, at least at this time.

### A. Accounting for Limitations of Fibromyalgia

An ALJ must assess a claimant's RFC "based on all the relevant evidence in [the claimant's] case record." 20 C.F.R. § 404.1545(a)(1). Examples of the types of evidence required to be considered in making an RFC assessment are the claimant's medical history, medical and laboratory findings, and medical source statements. SSR 96–8p. Based on all of the relevant evidence in the record, an ALJ must then make specific findings:

> The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts . . . and nonmedical evidence . . . . [T]he adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis . . . and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record. The adjudicator must also *explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved*.

SSR 96–8p (emphasis added).

Here, the ALJ determined that Scott had a severe impairment of fibromyalgia at step two of the sequential evaluation process. (AR 23.) In light of this finding, Scott argues that the ALJ failed to consider fibromyalgia properly in his RFC determination as required at step four of the sequential evaluation process. This argument has two components. First, Scott contends that the ALJ failed to provide for mandated limitations associated with fibromyalgia at step four. Second, even if the ALJ was not *mandated* to provide express limitations, Scott contends the ALJ failed to comply with the directive in SSR 96-8p that the RFC determination "must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (*e.g.*, laboratory findings) and nonmedical evidence (*e.g.*, daily activities, observations)." *Id.*

7

Despite the appeal of adopting the first contention as a straight-forward bright line test, Scott offers no statutes, administrative opinion or case law that mandates an *express* RFC limitation at step four be included for any medical condition found to be severe at step two, nor is the court included to create one on the limited factual record and briefing before it. The court need not address this issue, however, since the court agrees that Scott's second contention warrants remand.

Indeed, Scott's severe limitation of fibromyalgia is only referenced on two occasions in the ALJ's decision. (AR 23, 28.) While the Commissioner contends that either reference fulfills the ALJ's responsibility under SSR 96-8p, the court disagrees. On the contrary, the discussion in the ALJ's opinion merely acknowledges that Scott's pain was "partially due to fibromyalgia." The ALJ fails to point this reviewing court to any relationship, much less draw a logical bridge, between his finding Scott's fibromyalgia to be a severe limitation and the physical limitations set forth in the RFC determination. *See Zurawski v. Halter*, 245 F.3d 881, 887 (7th Cir. 2001). Having found that fibromyalgia was a severe impairment at step two, the ALJ is at least required to give some meaningful discussion at step four as to how the RFC accommodates for that limitation. Otherwise, there is an apparent inconsistency or at least an ambiguity that goes unexplained, making meaningful review by this court difficult at best.[2]

The failure to reconcile this inconsistency warrants remand. *See* SSR 96-8p (an ALJ must "explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved").

---

[2] Even if some meaningful explanation of accommodation were not required for *all* severe limitations (*e.g.*, where the accommodation in the RFC is obvious or self-explanatory), fibromyalgia is a recognized medical condition, carrying special consideration. *See Sarchet v. Barnhart*, 78 F.3d

8

## B. Claimed "Cherry-picking"

An RFC assessment represents the most a claimant can do despite his or her limitations. Here, Dr. Soat, a licensed psychologist, conducted a "consultative exam" of Scott and opined that:

> [1] The claimant appears to be capable of understanding, remembering, and carrying out simple instructions. [2] She may be able to respond appropriately to supervisors and coworkers. [3] *Her work pace may be slower than that of others.* [4] *She may at times have some problems maintaining her attention and concentration.* [5] She *may* be able to adapt to changes in the work place. [6] She said that job changes would not bother her. [7] She may be able to withstand routine and work stresses. [8] She said that time pressure does not bother her.

(AR 975 (emphasis added).) The ALJ not only afforded Dr. Soat's opinion "significant weight," some of these findings were expressly incorporated into the RFC determination -- specifically, limitations [2], [5] and [6]. (AR 30.)

Scott now takes issue with the ALJ for incorporating some portions of Dr. Soat's findings into the hypothetical question posed to the vocational expert, while ignoring others -- so-called "cherry picking." Relatedly, Scott contends that the ALJ engaged in so-called "cherry-picking" because there are limitations in Dr. Soat's opinion that were also (presumably) afforded significant weight, but not incorporated into the RFC determination. In short, Scott contends that the ALJ cannot discuss only those portions of a treating physician's report that support his opinion while failing to adopt those limitations that support a contrary opinion or at least explain why those limitations have not been adopted. The court agrees. *See Myles v. Astrue*, 582 F.3d 672, 678 (7th Cir. 2009) ("An ALJ may not selectively consider medical reports, especially those of treating

---

305 (7th Cir. 1996). That special consideration obligates the ALJ to take greater caution in evaluating a claimant's condition once the existence of fibromyalgia is determined. *Id* at 307.

physicians, but must consider all relevant evidence. It is not enough for the ALJ to address mere portions of a doctor's report.") (internal quotation marks and citations omitted); *Murphy v. Astrue*, 496 F.3d 630, 634 (7th Cir. 2007) (same).

Here, the ALJ failed to incorporate two limitations that were favorable to a disability finding: [3] her work pace may be slower than that of others; and [4] she may at times have some problems maintaining her attention and concentration. (AR 970.) No explanation is provided in the ALJ decision as to why these two limitations were left out.[3] When taken in isolation, each of these deficiencies may not be sufficient to require remand, but when taken together, such cherry-picking warrants remand.[4] *See Smith v. Apfel*, 231 F.3d 433, 438 (7th Cir. 2000) ("An ALJ may not simply select and discuss only that evidence which favors his ultimate conclusion. Rather, an ALJ's decision must be based upon consideration of all the relevant evidence.") (internal citation omitted).

### C.  Treating Physician

The Seventh Circuit has repeatedly addressed the appropriate standards that the Commissioner must follow when weighing the opinions of a treating physician. In *Jelinek v. Astrue*, 662 F.3d 805 (7th Cir. 2011), the court explained that a "treating physician's opinion that is consistent with the record is generally entitled to 'controlling weight'" and "an ALJ who chooses to reject a treating physician's opinion must provide a sound

---

[3] This error is further compounded by the fact that the ALJ states that Scott "is able to respond appropriately to supervisors and coworkers" (AR 26); whereas, Dr. Soat actually opined only that "[s]he may be able to respond appropriately to supervisors and coworkers." (AR 970.)

[4] Of course, there may well be other evidence in this record that dispels the court's concern. However, the court will not speculate either way. Rather, the court will leave it to the ALJ to first address this possibility. *See* SSR 96-8p (ALJ to include "a narrative discussion describing how the evidence supports each conclusion"). In requiring a narrative explanation, ALJs can best be

10

explanation" for doing so. *Id.* at 811 (citing 20 C.F.R. § 404.1527(d)(2)); *see also Schaaf v. Astrue*, 602 F.3d 869, 875 (7th Cir. 2010); *Campbell v. Astrue*, 627 F.3d 299, 306 (7th Cir. 2010); *Schmidt v. Astrue*, 496 F.3d 833, 842 (7th Cir. 2007). And even "[i]f an ALJ does not give a treating physician's opinion controlling weight, the regulations require the ALJ to consider[:] the (1) length, nature, and extent of the treatment relationship; (2) frequency of examination; (3) physician's specialty; (4) types of tests performed; and (5) consistency and supportability of the physician's opinion." *See Scott v. Astrue*, 647 F.3d 734, 740 (7th Cir. 2011); *Moss v. Astrue*, 555 F.3d 556, 561 (7th Cir. 2009); 20 C.F.R. § 404.1527(d)(2).

Here, the ALJ adequately explained why Dr. Bentkowski's opinion did not deserve controlling weight (AR 30), but it at least appears that the ALJ did not examine the factors laid out in 20 C.F.R. § 404.1527(d)(2)-(6) and § 416.927(d)(2)-(6) in determining what weight, if any, it deserved. In fairness, the ALJ makes tacit reference to these regulations on page 26 of his decision. Still, the analysis of Bentkowski's opinion that follows several pages later belies any consideration to the factors set forth in those regulations. In particular, nothing in the ALJ's decision shows that he considered at least two of these factors: (1) the length of the treatment relationship; and (2) the frequency of the examinations. Indeed, little (if any), meaningful analysis appears to have been made of the tests performed by Scott's treating physician. Accordingly, on remand the ALJ is directed to give greater consideration to the question of weight, if any, due Dr. Bentkowski's opinion as a treating physician, as well as provide more detailed analysis of the above factors.

---

prevented from "succumb[ing] to play doctor and make their own independent medical findings."

**D. Remaining Issue**

Scott's remaining argument is that the ALJ's assessment of her credibility is flawed. Because that issue is dependent upon reconsideration of the primary issues already addressed above, the court need not address credibility at this time. *See Scott*, 647 F.3d at 741 ("These flaws are enough to require us to remand [and] [w]e therefore needn't decide whether the reasons the ALJ gave in support of her adverse credibility finding . . . were so 'patently wrong' as to separately require remand.")[5]

ORDER

IT IS ORDERED that the decision of defendant Carolyn W. Colvin, Acting Commissioner of Social Security, is REVERSED and the case is REMANDED under sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this opinion.

Entered this 28th day of January, 2016.

BY THE COURT:

/s/

WILLIAM M. CONLEY
District Judge

---

*Rohan v. Chater*, 98 F.3d 966, 971 (7th Cir.1996).
[5] In issuance of this opinion, the court does not intend to suggest the result that should be reached on remand. Rather, the court encourages the parties and the ALJ to reconsider the record evidence and issues as a whole, including the deficiencies identified in this opinion. *See Pierce v. Colvin*, 739 F.3d 1046, 1051 (2014) (on remand the ALJ should take a "fresh look" at the RFC and vocational questions after the credibility issue has been re-evaluated); *Mollett v. Astrue*, No. 3:11–CV–238, 2012 WL 3916548, at *9-10 (N.D. Ind. Sept. 7, 2012).